Foster, P. J.
This appeal involves the claims of fourteen claimants for unemployment insurance. The Unemployment Insurance Appeal Board has overruled determinations of the Industrial Commissioner disqualifying claimants from receiving benefits for a period of seven weeks on the ground they lost their employment because of a strike. From that decision the Industrial Commissioner has appealed.
The claimants involved are longshoremen, checkers and one harbormaster, who work on the docks of the New York City water front. Longshoremen load and unload cargoes from vessels. Cargoes are checked against bills of lading and these operations are performed by checkers. The record does not disclose the duties of a harbormaster.
Longshoremen get their assignment for work under an arrangement known as a shape-up, which occurs twice daily, at 7:55 a.m. and 12:55 p.m. At the shape-up the foreman of the employer selects the men he wants for the particular loading and unloading job. The men not taken are told to report to the next shape-up, and if at that time there is work foremen will again select those whom they choose, but there is no guarantee of work. If the loading or unloading operation is not completed in the usual eight-hour shift longshoremen do not automatically *236 return to work but report to the next shape-up where the selective process is again repeated. Each pier has its own shape-up and a longshoreman has his choice as to which pier he will shape-up at. Checkers also obtain their work initially through the shape-up but their work does not cease ordinarily at the end of the shift. It continues until the loading or unloading operation is finished, unless the employer elects to pay a checker off at the end of a day’s work. While the precise duties of a harbormaster are not given there is proof that he also obtains employment through the shape-up process.
On November 10, 1948, an unauthorized strike broke out on some of the New York piers. It spread from pier to pier and became complete on November 13, 1948, when it was sanctioned by a union vote. The appeal board has found that it was a gradual affair and affected different locations at different times, and that no attempt was made to establish as to individual claimants the exact day when the strike may have affected their chance to obtain work. Nevertheless there is testimony in the record to the effect that claimants were out of work prior to November 13th on account of the nature of the employment rather than because of the strike. In any event the Industrial Commissioner does not contend that any of the claimants involved in this appeal were actually rendering services to any employer at the time of the strike.
The provisions of the statute involved (Unemployment Insurance Law [Labor Law, art. 18]) are these:
“ § 511. Employment 1. General definition. ‘ Employment ’ means any service under any contract of employment for hire, express or implied, written, or oral.”
“ § 592. Suspension of accumulation of benefit rights 1. Industrial controversy. The accumulation of benefit rights by a claimant shall be suspended during a period of seven consecutive weeks beginning with the day after he lost his employment because of a strike, lockout, or other industrial controversy in the establishment in which he was employed, except that benefit rights may be accumulated before the expiration of such seven weeks beginning with the day after such strike, lockout, or other industrial controversy was terminated.”
The main purpose of section 592 is clear. The State is to stand aside for a time, pending the settlement of differences between employer and employees, to avoid the imputation that a strike may be financed through unemployment insurance benefits. The difficulty of applying this section to claimants *237 arises from the peculiar nature of their employment and the manner in which they are hired. It is conceded that their employment is intermittent. They may be employed one day and idle the next, or they may have steady work for a week or longer. If they are not selected from the shape-up they are not under hire, for each hiring is separate. Thus the controlling issue is whether they had employment at the time of the strike •within the statutory meaning of that term.
We do not view the issue of employment in these claims as an issue of law. It is, we think, an issue of fact. The decision of the appeal board on an issue of fact is final if there is any substantial evidence to support it (Labor Law, § 623). There is substantial evidence in the record to support the finding of the board that claimants had no employment at the time a strike took place. At most they merely had an expectancy or probability of employment if shape-ups were not prevented by the strike, but they were under no contract of hire, express or implied, written or oral. The Industrial Commissioner argues for a wider interpretation of the term “ employment ” than that contained in the statute, but under the widest definition a mere expectancy of employment cannot by any process of logic be deemed actual employment. And claimants cannot have lost something they did not possess.
We are referred to two cases decided by this court: Matter of Birkmeyer v. General Motors Corp. (272 App. Div. 855), and Matter of Sadowski (257 App. Div. 529). In both of those cases claimants were not rendering actual service at the time of the strike, but they were nevertheless under a general contract of hire and each had an established employee relationship. We are also referred to a case involving longshoremen under the California Unemployment Insurance Act (Matson Terminals, Inc., v. California Employment Comm., 24 Cal. 2d 695). There, however, the hiring was done through a central hiring hall, not through the shape-up process, and the individual employer had no choice as to the men he employed. Jobs were shared through a system of compulsorj" rotation, port wide in nature. An association was, in reality, the employer. The court held that under such circumstances a longshoreman had more than a mere expectancy of work, indeed, that his right of work was more secure than that of an ordinary employee.
Those cases furnish no persuasive argument for reversal here.
It may be that the decision complained of will have unfair and discriminatory results. Longshoremen who happen to be idle at the time of a strike, although possessed of the probability *238 of work the next day, will not have their benefit rights suspended ; while those who may be actually unloading a cargo, or who have merely been selected for that purpose, will be disqualified for seven weeks. However we have no power to regulate such difficulties. Their solution rests with the Legislature rather than in the courts. Nor can we say as a matter of law that there is no evidence to support the determination of the appeal board in these claims.
The decision should be affirmed, without costs.
Deyo, J.
(dissenting). The benefits of the Unemployment Insurance Law were intended for persons ‘ ‘ unemployed through no fault of their own.” (Unemployment Insurance Law [Labor Law, art. 18], § 501.) A person out on strike, regardless of the merits of his position, is not involuntarily unemployed but rather has, in concert with others, voluntarily withdrawn himself from the labor market for purposes of his own. Such a person is subject to a seven weeks’ waiting period before he may enjoy unemployment insurance. (Unemployment Insurance Law, § 592.)
The claimants herein were prevented from following their usual employment, at least from November 13 to November 28, 1948, because of the longshoremen’s strike which affected substantially the entire waterfront. Granted, that due to the hiring practice peculiar to the longshoremen’s industry, these men may not have been under any contract of hire at the very moment the strike became effective and granting further, that not all of them might have been selected for work on each working day during the continuance of the strike, still it seems clear that they came within the intent and meaning of section 592 of the Unemployment Insurance Law and were, therefore, subject to the waiting period therein specified. To carry into effect what the Legislature obviously intended does no violence to the statutory language employed. It merely necessitates that the phrase ‘ ‘ lost his employment ’ ’ be given a more liberal and a broader construction as meaning “ deprived of ” or “ kept from,” rather than “ taken from the possession of.”
The decision of the Unemployment Insurance Appeal Board should be reversed and the initial determination of the Industrial Commissioner should be modified by making the effective date of the suspension November 13th in each instance, and as so modified, should be affirmed.
Heffernan and Brewster, JJ., concur with Foster, P. J.; Deyo, J., dissents, in a memorandum in which Coon, J., concurs.
Decision affirmed, without costs.